Syllabus.

## S. M. DAMON, ET AL., *v.* RELIABLE TRANSFER COMPANY, LIMITED, ET AL.

## No. 1163.

APPEALS FROM CIRCUIT JUDGE, FIRST CIRCUIT.·
HON. C. W. ASHFORD, JUDGE.

SUBMITTED AUGUST 11, 1919.            DECIDED AUGUST 20, 1919.

KEMP AND EDINGS, JJ., AND CIRCUIT JUDGE DEBOLT
IN PLACE OF COKE, C. J., ABSENT.            ⚬

LIENS—*common law artisan's lien—effect of voluntary delivery to owner.*

> When one entitled to a lien upon a chattel for its repair voluntarily delivers such chattel to its owner the lien is extinguished.

SAME—*same—resumption of possession does not revest the lien.*

> When the lien has been extinguished by delivery of the chattel the lien does not revest upon possession being restored.

CHATTEL MORTGAGES—*liability of purchaser of mortgaged chattel without consent of mortgagee.*

> One who converts to his own use a chattel subject to a duly recorded chattel mortgage without the consent of the· mortgagee is liable to the mortgagee for its value.

OPINION OF THE COURT BY KEMP, J.

On February 6, 1918, the complainants S. M. Damon, A. W. T. Bottomley and James L. Cockburn, copartners doing business under the firm name of Bishop & Company, and E. F. Bishop and A. W. T. Bottomley, guardians of the estate of said S. M. Damon, filed a bill in equity to foreclose a chattel mortgage given by the Reliable Transfer Company, Limited, a corporation, to secure the payment of its promissory note to said Bishop & Company dated April 28, 1916, for $6000 payable in monthly instalments of $500 each with interest at the rate of eight

per cent. per annum.   The mortgage which was duly re-
corded on May 4, 1916, covered four auto trucks and
other personal property therein particularly described
and by its terms included "all personal property of every
description, nature or kind whatsoever and wheresoever
the same may be, now owned or possessed by the mort-
gagor, and all which the mortgagor may own or possess
at any time hereafter during the existence of this se-
curity" etc.   Failure to pay the principal sum of the note
and interest thereon since the 16th day of February,
1917, was alleged.   In addition to the mortgagor the bill
joined as respondents the Club Stables, Limited, Califor-
nia Feed Company, Limited, Auto Service & Supply
Company, Limited (corporations), and Pacific Automo-
bile and Machine Shop, a copartnership.   It was averred
that the three corporations claimed some interest in the
mortgage as attaching creditors; that the copartnership
claimed some interest therein, the exact nature or amount
whereof was unknown to complainants, and that all such
claims were subject to the rights of complainants as
mortgagees.

The bill prayed that the mortgage be foreclosed; that
the amount due thereunder, including principal, interest
costs and attorney's fees, be declared a first lien on the
property and superior to any and all claims of the re-
spondents; that a commissioner be appointed to sell the
property and apply the proceeds of sale, after payment of
expenses, to the mortgage debt; for a deficiency judg-
ment; and for general relief.   The Reliable Transfer
Company filed no answer and made no contest.   The
Auto Service & Supply Company, Limited, and the Pa-
cific Automobile and Machine Shop interposed motions
to strike portions of the bill of complaint.   The motions
were denied and the respondents filed answers.   The an-
swers of Club Stables, Limited, and California Feed

Company, Limited, set up claims as attaching creditors which they prayed to be declared prior liens to the mortgage lien of the complainants. These claims were denied by the circuit judge. Neither of these respondents has appealed and no further reference need be made to them. The Auto Service & Supply Company, Limited, filed an answer in which it claims that the said after-acquired property was not subject to any claim or lien in favor of the complainants prior to its alleged claim; that Bishop & Company had guaranteed the payment of its bill for supplies furnished to the Reliable Transfer Company; that Bishop & Company made fraudulent representations concerning the solvency of the Transfer Company; that it had extended credit to the Transfer Company at the special instance and request of Bishop & Company; and that Bishop & Company by reason of such alleged fraudulent conduct was estopped to deny the priority of the lien claimed by it amounting to $182.17. The Pacific Automobile and Machine Shop also filed an answer in which it claims that it had done repair work on the auto trucks and automobiles of the Reliable Transfer Company at the urgent request of Bishop & Company and upon the promises of the complainants that all reasonable charges and common law liens would be paid; that prior to February 16, 1917, services rendered and materials furnished amounted to the sum of $181.55; that since February 16, 1917, services were rendered and materials furnished as artisans, repairmen and warehousemen to the Transfer Company at the special request of Bishop & Company and in reliance on their representations and promises that the claims therefor would be paid, amounting to $403.45; that during all the time since April 16, 1916, the respondents have had continuous possession and a common law artisans', repairmen's and warehousemen's lien against the six ton Doane auto truck

for the sum of $585 which is prior to any rights of the complainants who are estopped to deny the existence and priority of the alleged lien; that Bishop & Company had exclusive and absolute control of the finances, income and expenditures of the Transfer Company; and that as to the Minominee truck, mentioned in the mortgage and bill of complaint, the Transfer Company with the express consent and authority of Bishop & Company had sold it to the respondents for the sum of $120, which sum had been credited on the bill against the Transfer Company. The answer prayed that the title to the Minominee truck be declared to have passed to the respondents; and that they be declared to have a prior lien against the six ton Doane auto truck for $585. Replications to the answers were filed.

Trial was had which concluded May 18, 1918, and the circuit judge on that date rendered an oral decision which has been transcribed into the record, in which he found against the two contentions of the respondents to the effect that the note and mortgage had not been properly executed by authorized officers of the mortgagor corporation and that the indebtedness exceeded the capital of the mortgagor company contrary to law. These points are not urged here and must be considered as abandoned. The circuit judge also found that the mortgage was good and valid as to all the property therein specially mentioned and owned by the mortgagor at the time of its execution but ineffective as to all after-acquired property. As to the claim of Pacific Automobile and Machine Shop that it has a common law lien upon the six ton Doane truck to secure its repair and storage bill the circuit judge found that said lien was valid and superior to the mortgage lien to secure $88.50 of the repair bill claimed and $20 of the storage bill claimed but as to the remainder of said repair and storage bills claimed the mortgage

lien is superior. The $88.50 bill which the circuit judge found to be a superior lien to the mortgage was the latest repair bill against the six ton Doane truck and the $20 was the amount which he found to be a reasonable charge for two months' storage, the said respondent having retained possession of said six ton truck since the latest repairs amounting to $88.50 were made. All other claims of this respondent were overruled.

As to the claim of the Auto Service & Supply Company, Limited, the circuit judge found that it had adjusted upon one of the mortgaged vehicles certain tires of the value of about $157 but found that there was no guaranty or undertaking by the mortgagees, either through the agency of Mr. Macauley or otherwise, to pay for the tires; that Macauley did not give or purport to give such guaranty, either on behalf of the mortgagees or otherwise, and was not authorized or in any manner held out by the mortgagees as being authorized to in anywise represent them in the premises, and that the charges of fraud against the mortgagees were not established by the proof.

Having found against the claims of both respondents, except as to the portion of the claim of the Pacific Automobile and Machine Shop as above set out, a decree was entered foreclosing the mortgage as prayed for except as to after-acquired property and subject to the claim of Pacific Automobile and Machine Shop found to be superior to the mortgage and also that complainants recover of the respondent Pacific Automobile and Machine Shop $120, the value of the Minominee auto truck mentioned in the mortgage and converted by said respondent to its own use.

The respondents Auto Service & Supply Company, Limited, and Pacific Automobile and Machine Shop have appealed and attack numerous rulings admitting and ex-

cluding testimony, allowing setoff against one of the respondents for the value of the Minominee truck, not allowing the full amount of storage and repair bills as a prior claim and not ordering a marshalling of securities.

The alleged errors in the admission and exclusion of evidence are so numerous that we shall not attempt a discussion of them.    We have carefully read the record and the transcript of the evidence which is very lengthy and conclude that the respondents were allowed very wide scope in their attempt to prove the allegations of their answers.    If the trial judge did not at all times maintain that degree of exterior calm expected of him in the face of the exceedingly long and tedious examination and cross-examination of witnesses attempted by counsel for the respondents it should not be charged up to him as indicating bias.    They were given every opportunity to prove their allegations and failed.

The Pacific Automobile and Machine Shop complains that it should have been allowed the full five months' storage claimed.    "The common law lien given to warehousemen does not extend to cases of private storage." 17 R. C. L. 603. A person not an innkeeper or warehouseman nor in the business of storing goods, who permits the property of another to remain on his premises under an agreement to pay storage, but without any agreement for a lien, has no lien for the storage at common law. *Lewis* v. *Gray,* 109 Me. 128.    In the case at bar the one claiming the lien had no agreement with the owner of the truck for a lien nor that storage was to be paid and does not come within the class of persons entitled at common law to a lien for storage.    The claim for storage in any amount was erroneously allowed but as the complainant has not appealed the decree for $20 storage will not be disturbed.

It is further contended that the lien for repairs should

have extended to the whole repair bill instead of being limited to the last repair bill. The truck had at various times covering a period of about two years been repaired by the respondent at the request of the owner, but after each repair the truck was returned to the owner for use in his business until the final repairs, allowed as a prior claim, were made when respondent retained possession of the truck until it was taken from his possession upon process issued in this proceeding. In effect respondent admits that the character of lien claimed is extinguished by delivery of the chattel repaired but contends that the lien revested upon possession being restored. He relies upon *Drummond* v. *Griffin*, 114 Me. 120, 95 Atl. 506, as authority for his contention. That case involved a livery stable keeper's statutory lien for the board of a horse which was used daily by the owner and the holding was that the daily taking of the horse by the owner for the time being deprived the keeper of his lien but that upon the restoration of the horse to his custody for a continuation of food and shelter under his existing contract for so doing the lien would revest in him. The facts of the two cases are not at all similar. The horse was being boarded under a contract continuing in its nature and besides we are unable to tell what effect the statute creating the lien may have had upon that case. At any rate we do not feel justified in disregarding the long line of authorities holding that when a party entitled to a lien dependent upon possession voluntarily delivers the property to the owner the lien is extinguished. *Gregory* v. *Morris*, 96 U. S. 619; *Fishell* v. *Morris*, 57 Conn. 547, 18 Atl. 717; *Oakes* v. *Moore*, 24 Me. 214, 41 Am. Dec. 379; *Gardner* v. *LeFevre*, 180 Mich. 219, 146 N. W. 653; *Arians* v. *Brickley*, 65 Wis. 26, 26 N. W. 188.

As to the Minominee truck which the respondent purchased from the mortgagor we concur in the finding of

the circuit judge that the purchase was not made with the knowledge and consent of the mortgagees. The circuit judge made this finding upon ample evidence to support the finding. It is not contended that the truck was not subject to the mortgage. It is admitted that the respondent purchased it and appropriated it to his own use. We know of no avenue by which he can escape responsibility for the value of the chattel converted he having converted it without the consent of the mortgagees.

The only claim of the Auto Service & Supply Company, Limited, which is not disposed of by what we have already said, is that the complainants guaranteed the payment of the tire account of the mortgagor to it. The respondent's own evidence does not support this claim. Whether or not Mr. Macauley had or was held out as having authority to guarantee the account on behalf of complainants is immaterial because the evidence fails to show that he undertook to so guarantee it. We fail to find merit in any of the contentions of the respondents.

The decree should be affirmed and it is so ordered.

*Robertson & Olson* for complainants.

*A. M. Cristy* and *U. E. Wild* for respondents-appellants.