**In re H.F. GRANT, Jr., a/k/a Huey Foster Grant, a/k/a Buster Grant, Jr., and Taffy Jane Grant, Debtors.**

**Bankruptcy No. 283–00182.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

April 6, 1984.

Bruce Sadler, Amarillo, Tex., for debtor.

O.M. Calhoun, Amarillo, Trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The Amarillo National Bank, in adversary proceeding number 283–0115, had challenged the entitlement of the debtors, Huey Foster Grant and Taffy Jane Grant, to discharge. The thrust of the objection to discharge was that the debtors had a interest valued at $13,914.50 that either had vested or would soon vest in a retirement plan and in a profit sharing plan established by the former employer of the debtor, Huey Foster Grant. The existence of that profit sharing plan and retirement plan was not divulged to creditors until the debtors were interrogated about the asset during the § 341 meeting. Separate memorandum and order and judgment have been entered in that adversary proceeding.

After the § 341 meeting was conducted the debtors amended their schedules and listed the $13,914.50 interest in the Retirement Plan and in the Profit Sharing Plan at Panhandle Steel. Also they amended their exemptions with Taffy Jane Grant claiming the family exemptions under state law and Huey Foster Grant claiming the bankruptcy exemptions. Specifically Huey Foster Grant contended that the aggregate proceeds of $13,914.50 in the two plans should be exempted under the provisions of §§ 522(d)(5) and 522(d)(10). The Amarillo National Bank challenged debtors' exemptions claims and argues that if those monies are not exempted to the debtors the debtors will have sufficient funds with which to pay their unsecured creditors.

There is no problem with $7,900.00 of the aggregate claim being exempted under the "spillover" or "wild card" provisions of § 522(d)(5). *See In Matter of Cannady,* 653 F.2d 210 (5th Cir. 1982). The balance of $6,014.50 appears to be claimed as exempt property pursuant to the provisions of § 522(d)(10)(E) which permits an exemption under a stock bonus, pension, profit sharing, annuity, or similar plan or contract. In interpreting that provision *Collier* states that such payment of benefits under § 522(d)(10)(E) may be exempted only to the extent necessary for the support of the debtor and the debtor's dependents. 3 Collier on Bankruptcy 522–65 (15th ed. 1980). However, the payment of benefits under that section is not exempt property if it is on account of age or length of service, the plan was established by an insider that employed the debtor at the time the rights arose, *and* the plan does not qualify under §§ 401(a), 401(b), 408 or 409 of the Internal Revenue Code of 1954. Before the exceptions apply all three of those conditions must be met. *In re Miller,* 33 B.R. 549 (Bkrtcy.D.Minn.1983). In the instant case there was no proof offered which might tend to show that the employer was an insider to the debtor at the time the plans were adopted so it is not necessary to inquire concerning the remaining exceptions.

The next consideration is whether the payments are "reasonably necessary for the support of the debtor and any dependent of the debtor." When it is shown that the debtor is not currently receiving the payments as his basis of support the courts will consider whether the payments will be necessary for the debtor's future needs. *In re Miller,* supra; *Matter of Kochell,* 31 B.R. 139 (W.D.Wis.1983). The "reasonably necessary" standard requires that the Court take into account other income and exempt property of the debtor, present and anticipated, and that the appropriate amount to be satisfied for the debtor ought to be sufficient to sustain basic

needs, not related to his former status in society or the life style to which he is accustomed, but taking into account the special needs of the debtor. *Matter of Taff,* 10 B.R. 101, 107 (Bkrtcy.D.Conn. 1981).

The testimony offered at the hearing reflected that prior to bankruptcy both husband and wife were gainfully employed. In fact, Taffy Jane Grant was employed by The Amarillo National Bank, the contestant to her exemption claim. She testified that she lost her job with the bank as a result of the filing of the bankruptcy petition, that she has tried without success to get a job with another bank, and that presently she is working as a waitress part time and attending college. Whether or not she was fired by the bank merely because she joined her husband in filing the bankruptcy petition is not within the scope of this memorandum. The consideration addressed is whether, under the circumstances of this case, the additional proceeds of $6,014.50, if received from Panhandle Steel, are reasonably necessary to debtor's support. Where, as here, the family substantially is a one income family with the contributions made or expected to be made by Taffy Jane Grant while she is attending school being insignificant, the liberality which is applied to exemption claims mandates that that inquiry must be answered in the affirmative.

I find, therefore, that the additional sum of $6,014.50 is reasonably necessary for the support of the debtors. I conclude that $7,900.00 of the aggregate sum of $13,-914.50 is exempt under the provisions of § 522(d)(5) and the balance of $6,014.50 is exempt under the provisions of § 522(d)(10)(E).

It is, therefore, ORDERED by the Court that the challenges by The Amarillo National Bank to the exemptions claimed by the debtors, Huey Foster Grant and Taffy Jane Grant, be, and they are hereby, denied and overruled.

All relief not herein granted is denied.